PHILIP C. TENCER (173818)
TENCERSHERMAN LLP
12520 High Bluff Drive, Suite 240
San Diego, CA  92130
Telephone:   (858) 804-6900
Facsimile:   (858) 754-1260
Phil@TencerSherman.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL MELCHER and MELCHER FAMILY LIMITED PARTNERSHIP,<br><br>Plaintiffs,<br><br>vs.<br><br>FIVE9, INC., as the successor in interest to Face It, Corp.; and LANCE FRIED,<br><br>Defendants. | CASE NO. '16CV2440 BAS BGS<br><br>**COMPLAINT FOR:**<br>1) Violation of the Federal Securities Laws<br>2) Violation of California Securities Laws<br>3) Fraud<br>4) Breach of Fiduciary Duty<br>5) Elder Abuse<br>6) Rescission |

## INTRODUCTION

1.   This is an action for securities fraud, breach of fiduciary duty and elder abuse against Five9, Inc. ("Five9"), which acquired Face It Corporation ("Face It") in October 2013.  At the time of the acquisition, Face It was a privately held social engagement and mobile customer care solution provider that was doing business in California under the name of Hold-Free Networks.

/ / /

/ / /

1

COMPLAINT

2. Five9 is the leading provider of cloud contact center software. Five9 helps customer contact centers create a positive business interaction with each customer.

## SUMMARY OF THE ACTION

3. Defendants issued misleading statements to plaintiffs by failing to disclose that Face It and Five9 had already begun negotiating a possible acquisition of Face It by Five9 at the time that Face It purchased all of the Face It stock owned by plaintiffs.

4. On September 9, 2013, Face It and plaintiffs entered into a stock purchase agreement by which plaintiffs sold all of their shares of Face It back to the company.

5. Before September 9, 2013, Face It and Five9 had already begun negotiating the acquisition of Face It, the terms of which were reflected in a draft term sheet.

6. On or about September 13, 2013, Five9 and Face It signed a definitive term sheet, which lead to the October 18, 2013 acquisition of Face It by Five9 for $15,032,000, which included $2,964,000 in cash and 5,691,000 shares of Five9 common stock, which was valued at $12,064,000. The acquisition also included employment and service agreements for Defendant Lance Fried ("Fried").

7. At no time prior to Face It's repurchase of its stock from plaintiffs did Fried or Face It ever disclose that it was negotiating with Five9 for the purchase of Face It.

## VENUE AND JURISDICTION

8. As to the First Cause of Action, jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5. As to the remaining Causes of Action, supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 because the remaining Causes

of Action are related to the First Cause of Action and form part of the same case or controversy.

9. Venue is proper in this district pursuant to §27 of the 1934 Act. All of the false and misleading statements were made in or issued from this district.

10. Five9 maintains its principal executive office at 400 Executive Parkway, Suite 400, San Ramon, California, 94583. All of the acts and conduct complained of herein, including the dissemination of materially false and misleading information, occurred in this district.

11. In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

**THE PARTIES**

12. Plaintiff Carl Melcher purchased the common stock of Face It in or about October 2011 and sold his stock back to Face It in September 2013. He is currently 80 years old and at all relevant times was over the age of 65 and a resident of San Diego, California.

13. Plaintiff Melcher Family Limited Partnership ("MFLP") is a California partnership that was formed in or about September 1989 by Carl Melcher and is used by Carl Melcher for investments in companies, including his investment in Face It in 2011.

14. Defendant Five9 is a Delaware Corporation that was formed in March 2001 and is headquartered in San Ramon, California. It acquired Face It in October 2013 and is the successor in interest to Face It.

15. Defendant Fried was the president, CEO and Chairman of the Board of Face It until the company was acquired by Five9. In this capacity, Fried possessed the power and authority to control Face It. He personally negotiated the sale and acquisition of plaintiffs' Face It stock and personally negotiated the sale of Face It

to Five9. Because of Fried's position with Face It and his personal negotiations with both plaintiffs and Five9, he knew of the negotiations between Face It and Five9 before plaintiffs' sold their Face It stock back to the company. Fried was also one of the largest shareholders of Face It, before its acquisition by Five9.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

16. Defendants are liable for failing to disclose material facts known to them about the discussions that were ongoing concerning the sale of Face It to Five9. Defendants' fraudulent scheme operated as a fraud or deceit on plaintiffs and was a success, as it: (A) deceived plaintiffs regarding Face It's prospects and business status; (B) artificially reduced the value and price of Face It common stock; (C) caused plaintiffs to sell their Face It common stock at a deflated price; and (D) permitted defendant Fried to reap greater financial benefits from the acquisition of Face It by Five9 by reducing the total number of outstanding shares of Face It before the acquisition by Five9 occurred.

## BACKGROUND

17. On or about October 18, 2011, plaintiffs purchased 13,901,344 shares of Face It for $3 million dollars ($2.5 million in cash and a note for $500,000). This purchase price was based upon a valuation of $9.7 million for Face It. Plaintiffs' purchase of Face It represented approximately 30.875% of the outstanding shares of Face It. In connection with this purchase, Melcher also obtained the right to name two members to Face It's board of directors. Once the acquisition of Face It stock was completed, plaintiff Melcher became a board member of Face It.

18. During the time that plaintiffs owned Face It stock, there were no other outside investors in Face It. All of the remaining shareholders of Face It during that time were founders of the company who paid little, if any, money for their ownership interest in Face It.

19. In early 2013, Face It and Five9 began to have business discussions. According to presentations made by Fried at Face It board meetings, Five9 was a company that was interested in utilizing Face It's technology. During one or more board meetings in 2012 and 2013, Fried identified Five9 as a potential customer and further represented to the Face It board that Face It had made a presentation to Five9 concerning its technology, in the hopes that Five9 would become a customer of Face It.

20. In 2013, Face It was not meeting it revenue projections. The relationship between Melcher and Fried began to deteriorate as Fried sought additional capital investment from Melcher and Melcher refused to make further capital investments in Face It until there was evidence of greater sales and income.

21. In late July 2013, Fried proposed that Face It repurchase all of the stock owned by plaintiffs.

22. Between late July 2013 and September 9, 2013, Fried, on behalf of Face It, and plaintiffs negotiated the terms by which plaintiffs' would sell their Face It stock back to the company.

23. Sometime before or during the negotiations between Fried and plaintiffs to repurchase plaintiffs' Face It stock, Fried began discussions with Five9 concerning the sale of Face It to Five9.

24. As such, the negotiations between Fried and plaintiffs were occurring simultaneously as the negotiations between Face It and Five9.

25. At no time during the negotiations between Fried and plaintiffs concerning the repurchase of plaintiffs' Face It stock did Fried or anyone else at Face It ever disclose that Face It was negotiating with Five9 for the sale of Face It to Five9.

26. On or about Monday, September 9, 2013 plaintiffs sold their stock back to Face It for $1.5 million, which was half of their initial investment. At the time of the sale, Melcher was 77 years old. At the time of the sale by plaintiffs to

1  Face It, negotiations between Face It and Five9 concerning the purchase price Five9
2  would pay to acquire Face It were nearly final.

3      27.  On or about Friday, September 13, 2013, Face It and Five9 signed a
4  term sheet for the acquisition of Face It by Five9.

5      28.  On October 18, 2013, Five9, which at that time was a private
6  company, completed its acquisition of Face It.

7      29.  The acquisition of Face It by Five9 first became public on March 3,
8  2014 by way of Five9's 817-page form S-1 that was filed in connection with Five9
9  intention for an initial public offering.  On page 24 of the S-1 is a single line that
10 mentions Five9 acquired Face It in October 2013.  A description of the acquisition
11 is discussed beginning on page 157 of the form S-1.  Plaintiffs did not receive or
12 review Five9's S-1 when it was made public in March 2014.

13     30.  In early 2016, plaintiffs first learned that Five9 had acquired Face It
14 back in October 2013 when a family friend informed them about the acquisition.
15 Prior to that time, plaintiffs were unaware of the acquisition and were never
16 informed by defendants about the transaction at any time.

## COUNT 1

### For Violation of §10(b) of the 1934 Act and Rule 10b-5

### Against All Defendants

20     31.  Plaintiffs re-allege and incorporate herein paragraphs 1-30.

21     32.  Defendants made deliberately false and misleading statements by
22 failing to disclose to plaintiffs the current negotiations for the sale of Face It to
23 Five9, which constituted material facts necessary to make all statements made, in
24 light of the circumstances under which they were made, not misleading.

25     33.  Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that
26 they: (A) employed devices, schemes and artifices to defraud; (B) omitted to state
27 material facts necessary in order to make all statement made, in light of the
28 circumstances under which they were made, not misleading; and/or (C) engaged in

acts, practices and a course of business that operated as a fraud or deceit upon plaintiffs in connection with their sale of Face It common stock back to Face It.

34. Plaintiffs have suffered damages in that, in reliance on the communications by Fried and Face It, they sold their Face It stock at artificially deflated prices. Plaintiffs would not have sold their Face It common stock at the prices they were paid, or at all, if they had been aware that Five9 was interested in acquiring Face It.

## COUNT 2

### For Violation of §20A of the 1934 Act and Rule 10b-5

### Against All Defendants

35. Plaintiffs re-allege and incorporate herein paragraphs 1-34.

36. Fried acted as controlling persons of Face It within the meaning of §20(a) of the 1934 Act. By virtue of his position with the Company, and ownership of Face It stock, Fried had the power and authority to cause Face It to engage in the wrongful conduct complained of herein. Face It controlled Fried and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## COUNT 3

### Material Misleading Statements in the Sale of a Security,

### Cal. Corp. Code §§ 25401 and 25501

### Against All Defendants

37. Plaintiffs re-allege and incorporate herein paragraphs 1-36.

38. The offer and purchase of Face It stock by defendants from plaintiffs qualifies as a sale of a security under California law.

39. The offer and purchase of Face It stock from plaintiffs by defendants was made by means of stock purchase agreement which omitted material facts that were necessary in order to render the statements actually made in the stock purchase agreement not misleading in light of the circumstances in which they were

made, including the then-ongoing negotiations between Face It and Five9 for the acquisition of Face It by Five9.

40. Defendants violated the applicable provisions of the California Corporations Code, which caused plaintiffs to sell their Face It stock based on materially false and misleading information, and are liable for the damages and losses associated with the sale of plaintiffs' Face It stock.

41. Plaintiffs have been damaged by defendants' false and misleading statements and omission of material facts in connection with their sale of Face It stock and are entitled to the value of Five9 stock as of the filing of this complaint, plus all income received by defendant on the security, less the $1.5 million that plaintiffs received for their Face It stock, plus interest thereon.

## COUNT 4

## Fraud

## Against All Defendants

42. Plaintiffs re-allege and incorporate herein paragraphs 1-41.

43. Defendants had a duty to disclose all material facts about Face It before re-acquiring Face It stock from plaintiffs. However, they failed to disclose to Plaintiffs before their acquisition of Face It stock that the company was in negotiations with Five9 to sell the company.

44. Defendants concealed the then-ongoing negotiations between Face It and Five9 from plaintiffs with the intent to induce plaintiffs to sell their shares of Face It below the true market value of those shares.

45. Plaintiffs reasonably and justifiably relied upon their understanding of the facts and circumstances of the then current prospects for Face It, which arose solely from the representations by defendants. Absent defendants' concealment and suppression, plaintiffs would not have sold their shares of Face It stock.

46. Plaintiffs, at the time of the suppression and concealment, were unaware of the above-described material facts, and could not, in the exercise of

reasonable care and diligence, have discovered those true and material facts or defendants' fraudulent and deceitful intentions.

47.  As a direct and proximate result of defendants' conduct, Plaintiffs have been damaged in an amount exceeding the jurisdictional minimum of this Court, in an amount to be proven at trial.

48.  Plaintiffs are informed and believe, and on that basis allege, that defendants acted with malice, oppression and with intent to defraud, justifying the imposition of punitive damages against defendants in an amount sufficient to punish such conduct and deter any further such conduct in the future.

## COUNT 5

## Breach of Fiduciary Duty

## Against Defendant Fried

49.  Plaintiffs re-allege and incorporate herein paragraphs 1-48.

50.  Fried owed plaintiffs fiduciary duties based on his position as president, CEO and chairman of the board for Face It.

51.  Plaintiffs reposed trust and confidence in Fried, and there existed between plaintiffs and Fried a fiduciary relationship upon which plaintiffs justifiably relied.  Fried accepted plaintiffs' reliance on the fiduciary relationship.

52.  Before Face It purchased the Face It stock from plaintiffs, Fried failed to disclose that Face It and Five9 had begun discussions concerning the sale of Face It to Five9, which constituted a breach of Fried's fiduciary duties to plaintiffs.

53.  As a direct and proximate result of Fried's breach of his fiduciary duties, plaintiffs have been damaged, plus pre-judgment interest as provided by law, in an amount to be proven at trial.

54.  The breach of fiduciary duty by Fried was willful, deliberate, and in bad faith, done in conscious disregard of plaintiffs' rights, and done with the specific intention to damage and to create a situation that would place Fried in an advantageous position.  Under these circumstances plaintiffs are entitled to an

award of punitive and/or exemplary damages against Fried in an amount sufficient to punish him and make an example of him, and to deter other similar conduct in the future.

## COUNT 6
### Elder Abuse
### Against All Defendants

55. Plaintiffs re-allege and incorporate herein paragraphs 1-54.

56. Melcher was an adult over the age of 65, who was living in California, when he sold his shares of Face It in September 2013.

57. Pursuant to the contract between Melcher and Face It, Melcher sold his Face It stock back to Face It for $1.5 million on September 9, 2013.

58. As described herein, defendants acquired the personal property of Melcher, an elder adult, for wrongful use and with the intent to defraud.

59. Defendants' acts wrongfully deprived Melcher and the Melcher Family Trust of the right to use Mr. Melcher's personal property.

60. At the time Defendants took and retained Melcher's property, or assisted in doing so, they knew or should have known that Melcher had the right to have his personal property readily available to him. Such right was obvious to a reasonable person, as Defendants deprived Melcher of his personal property with the intent to defraud him by inducing him to sell his Face It stock at below it's true value.

61. In so doing, Defendants acted with malice, oppression and fraud, justifying the imposition of enhanced damages under California Welfare and Institutions Code section 15657 against Defendants in an amount sufficient to punish such conduct and deter any further such conduct in the future.

///

///

///

# COUNT 7

## Rescission of Contract

## Against All Defendants

62. Plaintiffs re-allege and incorporate herein paragraphs 1-61.

63. When plaintiffs sold their Face It stock back to the Company on September 9, 2013, they did so pursuant to a stock purchase agreement, which contained a mutual release.

64. The stock purchase agreement and the mutual release were fraudulently procured because defendants failed to disclose to plaintiffs before purchasing Face It stock from plaintiffs that Face It was simultaneously negotiating an acquisition of the company by Five9. Fried was the Face It representative who was negotiating the sale of Face It to Five9.

65. Fried also was the individual who negotiated the September 9 stock purchase agreement. As set forth above, Fried owed plaintiffs a fiduciary duty. He breached his fiduciary duty by failing to disclose to plaintiffs material information concerning the ongoing negotiations between Face It and Five9.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for judgment against defendants as follows:

1. To set aside the September 9, 2013 settlement agreement and release that was procured by fraud;

2. For compensatory damages according to proof;

3. For reasonable costs and attorneys' fees; and

4. Awarding such equitable/injunctive or other and further relief as the Court may deem just and proper, including but not limited to punitive damages.

///

///

///

# JURY DEMAND

Plaintiffs demand a trial by jury:

DATED: September 28, 2016            TENCERSHERMAN LLP

By: /s/ *Philip C. Tencer*
Philip C. Tencer, Esq.
Attorney for Plaintiffs
Carl Melcher & Melcher Family
Limited Partnership

COMPLAINT