# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL MELCHER; MELCHER FAMILY LIMITED PARTNERSHIP,<br><br>  Plaintiff,<br><br>v.<br><br>LANCE FRIED,<br><br>  Defendant. | Case No. 16-cv-02440-BAS(BGS)<br><br>**ORDER GRANTING DEFENDANT FRIED'S MOTION TO DISMISS**<br><br>**[ECF No. 24]** |

     Plaintiffs Carl Melcher and Melcher Family Limited Partnership ("MFLP") bring this action against Defendant Lance Fried. In their First Amended Complaint, Plaintiffs allege counts for federal and state securities fraud, breach of fiduciary duty, common law fraud, elder abuse, and rescission of contract. (First Am. Compl. ("FAC"), ECF No. 18.) Defendant moves to dismiss all of Plaintiff Melcher's individual claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (Motion to Dismiss ("Mot."), ECF No. 24.) Plaintiffs oppose. (ECF No. 25.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendant's motion to dismiss.

I. BACKGROUND[1]

Plaintiff Carl Melcher is approximately eighty years old. (FAC ¶ 12.) He is the founder and one of the limited partners of Plaintiff MFLP. (*Id.*) MFLP is a California limited partnership that Melcher formed in 1989, and it "is used by [him] for investments in companies." (*Id.* ¶ 11.)

This dispute arises from MFLP's investment in Face It Corp. (*See* FAC ¶ 1.) At the time, Face It "was a privately held social engagement and mobile customer care solution provider." (*Id.*) On October 18, 2011, MFLP purchased 30.875% of Face It's stock for $3 million, and Melcher became a board member of the company. (*Id.* ¶ 15.) Defendant Fried was at all relevant times the Chief Executive Officer and Chairman of the Board of Face It. (*Id.* ¶ 1.) MFLP was the sole outside investor in the company; all of the remaining shareholders were founders of Face It. (*Id.* ¶ 16.)

In 2013, Face It began having financial difficulties and was failing to meet its revenue projections. (FAC ¶ 18.) In an attempt to rectify Face It's financial status, Defendant asked Melcher for additional capital investments to keep the company afloat. (*Id.*) Melcher refused to do so until there was evidence that Face It was making greater sales or income. (*Id.*)

Around September 2013, Face It was still struggling financially, and Defendant reached out to Five9, a corporation interested in utilizing Face It's technology. (FAC ¶ 19.) The two companies discussed a potential sale of Face It to Five9 for an estimated value of $10 million. (*Id.* ¶ 21.) Then, without disclosing

---

[1] All facts are taken from the First Amended Complaint. For this motion, the Court assumes all facts alleged in the pleading are true. *See, e.g.*, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

these negotiations, Defendant allegedly proposed to Melcher that Face It repurchase all of the shares in the company held by MFLP. (*Id.* ¶¶ 19, 22–23.) On September 12, 2013, MFLP did so for $1.5 million, half of the amount it originally paid for these shares. (*Id.* ¶ 24.)

The parties effectuated this transaction through a Redemption Agreement executed between MFLP and Face It. (Redemption Agreement, Carlson Decl. ¶ 2, Ex. A, ECF No. 24-2.)[2] Melcher signed the Redemption Agreement as the President of the "Melcher Family Corporation," which is identified as the "General Partner of Melcher Family Limited Partnership." (*Id.*) The day after MFLP and Face It executed the Redemption Agreement, Five9 allegedly signed a term sheet for the acquisition of Face It, and on October 18, 2013, the sale was finalized. (FAC ¶¶ 25–26.)

A few years later in 2016, Melcher became aware of this acquisition timeline and brought suit against Defendant.[3] (ECF No. 1.) On July 10, 2017, Melcher and MFLP filed the First Amended Complaint alleging the following counts against Defendant: (1) & (2) violations of Federal securities laws; (3) violations of California securities laws; (4) fraud; (5) breach of fiduciary duty; (6) elder abuse; and (7)

---

[2] "Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the 'complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'" *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). Plaintiffs' First Amended Complaint refers to the Redemption Agreement, the document is central to Plaintiffs' claims, and no party questions the authenticity of the agreement. (*See* FAC ¶¶ 24, 37, 55, 61–63; *see also* ECF No. 7-1.) Therefore, the Court considers the Redemption Agreement in adjudicating this motion. *See Daniels-Hall*, 629 F.3d at 998.

[3] Plaintiffs' original complaint also brought claims against Five9, the successor in interest to Face It. The Court stayed these claims due to an arbitration provision in the Redemption Agreement. (ECF No. 7-1 at 8.) Ultimately, after Plaintiffs and Five9 reached a confidential settlement, the Court lifted the stay. (ECF No. 11.) Plaintiffs then filed their First Amended Complaint, which removed Five9 but retained Lance Fried as the sole defendant in this dispute. (ECF No. 18.)

rescission. (*Id.*) Defendant now moves to dismiss only Melcher's individual causes of action.[4]

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency" of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not

---

[4] Although Defendant moves to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6), he does not differentiate between the two dismissal standards in his motion. Because Rule 12(b)(6) is better suited to resolve Defendant's arguments, the Court applies only this standard. *See, e.g.*, *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010) ("Whether a plaintiff possesses legally enforceable rights under a contract is a question on the merits rather than a question of constitutional standing. Such a plaintiff fails to state a claim on which relief can be granted.).

accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

## III. DISCUSSION

Defendant challenges Melcher's ability to bring individual claims for violations of federal securities laws, violations of California securities laws, fraud, breach of fiduciary duty, financial elder abuse, and rescission. The Court will address these claims in turn.

### A. Federal Securities Claims
#### 1. Securities Exchange Act Section 10(b) and SEC Rule 10b-5

In Count I, both Melcher and MFLP allege that Defendant violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. (FAC ¶¶ 29–32.) Defendant argues that "the only party with standing to bring a claim is MFLP, the entity which bought and then sold the stock," and moves to dismiss Melcher as a plaintiff. (Mot. 4:5–7.)

The plaintiffs who may bring a private damages action pursuant to Section 10(b) and Rule 10b-5 are "limited to actual purchasers and sellers of securities." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975) (quoting *Birnbaum v.*

*Newport Steel Corp.*, 193 F.2d 461, 463 (2nd Cir. 1952)). This purchaser-seller notion is frequently interpreted as a "standing" requirement. *E.g.*, *Mount Clemens Indus., Inc. v. Bell*, 464 F.2d 339, 343 (9th Cir. 1972); *see also Eason v. General Motors Acceptance Corp.*, 490 F.2d 654, 657 (7th Cir. 1973).

Here, Plaintiffs argue Melcher is a proper plaintiff because he "is the general partner of MFLP" and "signed the September 9, 2013, Redemption Agreement between MFLP and Face It." (Opp'n 3:27–28.) The First Amended Complaint alleges Melcher "is the founder and one of the limited partners of MFLP and . . . is the individual responsible for negotiating the purchase and sale by MFLP of Face It stock." (FAC ¶ 12.)

The Court is not convinced that Melcher is a proper plaintiff. The Redemption Agreement demonstrates that the sale of stock at issue was between Face It and MFLP—not Melcher. Moreover, according to the Redemption Agreement's signature page, the "Melcher Family Corporation" is the general partner of MFLP—not Melcher. (*Id.*) Regardless, even if Melcher is the general partner of MFLP, the only parties to the Redemption Agreement are MFLP and Face It. Melcher cannot bring in his individual capacity "claims belonging to the partnership." *See Lindsey*, 409 F. App'x at 78 (citing Cal. Corp. Code §§ 16201, 16203, 16401(g)). Consequently, because Melcher is not a purchaser or seller of the implicated securities, the Court will dismiss Melcher's Count I with leave to amend. *See Blue Chip Stamps*, 421 U.S. at 731.

### 2. Securities Exchange Act Section 20(a) and Rule 10b-5

Plaintiffs' second claim invokes Section 20(a) of the Securities Exchange Act, which "provides for derivative liability of those who 'control' others found to be primarily liable under the 1934 Act." *In re Ramp Networks, Inc. Sec.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002) (citing 15 U.S.C. § 78(t)(a)). This claim is derivative of Plaintiffs' first claim for violation of Section 10(b) and similarly fails unless each Plaintiff can state a claim under that section. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999) ("To be liable under section 20(a) the defendants must be liable under another section of the Exchange Act."); *see also In re Ramp Networks, Inc. Sec.*, 201 F. Supp. 2d at 1063 (finding that the pleading requirements for violations of Sections 20(a) and 10(b) of the 1934 Act are the same).

Given that Melcher has not stated a claim under Section 10(b), his derivative count under Section 20(a) also fails to state a plausible claim. Hence, the Court will dismiss Melcher's Count II with leave to amend.

### B. California Corporations Code §§ 25401, 25402, and 25501

In Count III, Plaintiffs allege that Defendant violated California Corporations Code §§ 25401, 25402, and 25501. (FAC ¶¶35–39.) Again, Defendant challenges Melcher's ability to bring this count in an individual capacity. (Mot. 5:19–20.)

California Corporations Code § 25401 prohibits misrepresentations in connection with the purchase or sale of securities, and § 25402 forbids insider trading. The third provision Plaintiffs' pleading identifies, § 25501, establishes a private remedy for damages and rescission based on § 25401 liability. *See Cal. Amplified Inc. v. RLI Ins. Co*, 94 Cal. App. 4th 103, 109 (2001). These state provisions are patterned after federal securities laws. *See People v. Schock*, 152 Cal. App. 3d 379, 387 (1984); *see also Mueller v. San Diego Entm't Partners, LLC*, No. 16-cv-2997-GPC(NLS), 2017 WL 3387732, at *9 (S.D. Cal. Aug. 7, 2017).

Because the Court has concluded above that Melcher does not have the ability to bring federal securities fraud claims on behalf of himself, so too does he lack the ability to bring comparative claims for California securities fraud. *See Mausery v. Marketbyte LLC*, No. 12-cv-2461-JM(NLS), 2013 WL 12072832, at *12 (S.D. Cal. Jan. 4, 2013) (applying the same analysis to the plaintiff's federal and California securities claims because the elements of federal securities fraud are similar to California securities fraud). Further, although Melcher invokes California's insider trading provision, he is not a purchaser or seller of stock who can show he has been "harmed by virtue of insider trading" and would therefore have "a right of action against violators of section 25402." *See Friese v. Superior Court*, 134 Cal. App. 4th 693, 697 (2005). Thus, the Court will dismiss Melcher's individual Count III with leave to amend.

### C. Financial Elder Abuse

Melcher brings a claim for financial elder abuse under California's Elder Abuse Act, California Welfare and Institutions Code § 15610.30. (FAC ¶¶ 56–58.) Defendant argues this claim must be dismissed because Melcher "did not personally own or sell the stock" and an "elder abuse action cannot lie when the elder's interest is held in a supposedly injured entity." (Mot. 7:11–15.)

An elder becomes the victim of financial abuse when a person or entity "[t]akes, secretes, appropriates, obtains, or retains . . . property of an elder . . . for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1). An elder must be an individual residing in California who is at least 65 years of age or older.[5] *Id.* § 15610.27. For purposes of § 15610.30, an individual

---

[5] Plaintiffs' pleading may be interpreted as providing that both Melcher and MFLP are seeking to bring claims for elder abuse. (*See* FAC ¶¶ 53, 57.) MFLP, however, is a limited partnership—not an individual. Thus, it is not "any person residing in this state, 65 years of age or older." *See* Cal. Welf. & Inst. Code § 15610.27. Accordingly, to the extent that Plaintiffs' pleading raises an elder abuse claim on behalf of MFLP, this claim is dismissed with prejudice.

"takes, secretes, appropriates, obtains, or retains . . . property when an elder . . . is deprived of any property right, including by means of an agreement." *Id.* § 15610.30(c). A deprivation under this provision does not require "the direct taking by one person of the property of another," nor does it necessitate the satisfaction of "some kind of privity requirement." *Mahan v. Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841, 861–62 (2017).

Defendant's challenge to Melcher's claim focuses on whether Melcher was "deprived of any property right," *see* Cal. Welf. & Inst. Code § 15610.30(c), when MFLP sold the "Face It stock back to Face It for $1.5 million," (*see* FAC ¶ 55). Typically, "individual partners may not sue for damages to the partnership or their interests in the partnership." *See O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044, 1062 (2004). Because MFLP owned the stock that Defendant allegedly appropriated, Defendant believes Melcher cannot bring an elder abuse claim based on the deprivation of this property. (*See* Mot. 7:11–15.) *See also Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1023 (N.D. Cal. 2007).

The California Court of Appeal considered a similar argument in *Mahan v. Charles W. Chan Insurance Agency, Inc.*, 14 Cal. App. 5th 841, 862 (2017). There, the plaintiff elders—the Mahans—"purchased two life insurance policies, naming their children as beneficiaries." *Id.* at 846. They placed these policies into a revocable living trust and "made enough money available to the Trust, in advance, so that it would be self-sustaining 'for many years to come,' with no need for additional cash infusions from them for ongoing premium costs." *Id.* More than two decades later, when the Mahans were in cognitive decline, the defendant insurance agents allegedly engaged in a manipulative scheme to surrender one of the trust's life insurance policies and replace the second one. *Id.* This scheme resulted in $100,000 in commissions to the defendants, along with drastically higher life insurance premium costs for the trust. *Id.* The trust and the Mahans brought claims against the defendants, and the defendants demurred to the Mahans' financial elder abuse cause

of action. *Id.* at 847. The defendants argued they did not deprive the Mahans of any property under the Elder Abuse Act because the trust owned the life insurance policies at issue. *Id.* The trial court agreed and sustained the demurrers. *Id.*

The California Court of Appeal reversed. *Mahan*, 14 Cal. App. 5th at 869. It concluded the Mahans sufficiently alleged they were deprived of their property on several grounds. *Id.* at 862–65. For example, the court noted the Mahans alleged that—due to the defendants' conduct—they "had to reach into their pockets and sell assets to provide more cash to the Children's Trust than they ever planned to do" to cover the premium costs of the more expensive replacement insurance coverage. *Id.* at 864. The Court of Appeal reasoned that this allegation stated a deprivation of property because the Mahans alleged that "by manipulation and use of the Children's Trust as an instrument, the [defendants] managed to separate the Mahans from their money." *Id.*

Here, the First Amended Complaint does not plausibly state that Defendant deprived Melcher of his property. The pleading commingles the ownership of the shares of Face It, alleging simply that Plaintiffs owned the Face It Stock and that Defendant "acquired the property of Melcher, which was held in MFLP." (FAC ¶¶ 16, 19, 24, 56.) Plaintiffs therefore allege Defendant "deprived Melcher of his personal property." (*Id.* ¶ 58.) But the Redemption Agreement demonstrates MFLP owned the shares, not Melcher. *See Mahan*, 14 Cal. App. 5th at 855 (noting that if the plaintiffs had adopted a theory that one of the elders "was the 'real owner' of the [life insurance policy]" in the trust, that approach would have been "in many respects . . . inconsistent with the documentary evidence attached to" the elders' complaint). And, although the California Court of Appeal adopted an expansive view of "property of an elder" in *Mahan*, Plaintiffs' pleading lacks comparable allegations to sustain an analogous theory of liability. For example, the pleading has no allegations regarding the ownership structure of MFLP, how MFLP was capitalized, whether MFLP is used for estate planning purposes, and whether Melcher has been forced to

invest additional capital into the entity due to Defendant's alleged conduct. *See Mahan*, 14 Cal. App. 5th at 855. The First Amended Complaint simply alleges that Melcher is "one of the limited partners of MFLP." (FAC ¶ 12.)

In their opposition, Plaintiffs request leave to amend to "clarify that Melcher is the general partner of MFLP, MFLP was created for estate planning purposes, and Melcher has personally funded the entirety of MFLP." (Opp'n 7:9–14.) Accordingly, the Court will dismiss this claim with leave to amend. The Court cautions Plaintiffs, however, that they need to provide sufficient detail to allow the Court to determine whether Defendant's purported conduct plausibly deprived Melcher of any property right.

### D. Breach of Fiduciary Duty and Fraud

Both Melcher and MFLP allege breach of fiduciary duty and fraud against Defendant. (FAC ¶¶ 40–52.) Defendant seeks dismissal of Melcher's individual claims on the same rationale as above: Melcher did not personally own the shares of Face It. In *Mahan*, the elder plaintiffs also brought these two claims. 14 Cal. App. 5th at 868. After the California Court of Appeal concluded the Mahans successfully alleged that the defendants deprived them of property, the court noted that "[t]he analysis of injury is, in substance, the same" for the elders' breach of fiduciary duty and fraud claims. *Id.*

Here, the analysis is also the same. Thus, because the Court has already concluded that Melcher has not sufficiently alleged he was deprived of his property to support his financial elder abuse claim, the Court will also dismiss these two claims with leave to amend. *See Mahan*, 14 Cal. App. 5th at 868.

### E. Rescission of Contract

Last, Plaintiffs bring a claim for rescission of the Redemption Agreement. (FAC ¶¶ 60–63.) Defendant moves to dismiss Melcher's rescission claim on the same basis as his other claims. (Mot. 3:9–10.)

The Court agrees that Melcher's rescission claim is subject to dismissal because he was not a party to the Redemption Agreement. Further, the Court notes that rescission under California law is not a claim, but a remedy. *E.g.*, *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *17 (N.D. Cal. Jan. 3, 2011) (agreeing that in California "there is no standalone claim for . . . rescission"); *see also Nakash v. Superior Court*, 196 Cal. App. 3d 59, 70 (1987) ("Rescission is not a cause of action; it is a remedy."). Thus, the Court will dismiss Melcher's Count VII of the First Amended Complaint.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss Melcher's individual claims. Melcher is granted leave to amend his first, second, third, fourth, fifth, and six claims. Further, provided Melcher can state a cognizable and appropriate underlying claim, he may pursue rescission as a remedy in an amended pleading. If Plaintiffs choose to file a Second Amended Complaint, it must be filed no later than **June 12, 2018**.

**IT IS SO ORDERED.**

DATED: May 29, 2018

Hon. Cynthia Bashant
United States District Judge